UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRADLEY F.,[1]

                                 Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

                                 Defendant.
_____

DECISION & ORDER

21-CV-0529MWP

## PRELIMINARY STATEMENT

        Plaintiff Bradley F. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 15).

        Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 10, 11). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's motion for judgment on the pleadings is denied.

## **DISCUSSION**

**I.    Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

3

   (4)  if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his or her past work; and

   (5)  if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II. <u>The ALJ's Decision</u>

   In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since December 31, 2014, the alleged onset date. (Tr. 26).[2] At step two, he concluded that plaintiff had the severe impairments of "polysubstance use disorder; a depressive disorder; an anxiety disorder; post-traumatic stress disorder (PTSD); and degenerative disc disease." (*Id.*). The ALJ concluded that plaintiff also suffered from other impairments that were not severe. (Tr. 26-27). At step three, he found that plaintiff's mental impairments, including his polysubstance use disorder, met Sections 12.04 and 12.06 of the Listings. (Tr. 27-30). Therefore, the ALJ found plaintiff to be disabled at step three when considering plaintiff's impairments and his polysubstance use disorder. (*Id.*).

---

[2] The administrative transcript (Docket ## 6, 7, 8, 9) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

Pursuant to the regulations regarding drug addiction or alcoholism ("DAA"), *see* 20 C.F.R. §§ 404.1535, 416.935, the ALJ then considered whether plaintiff's substance use was material to the disability finding. The ALJ concluded that if plaintiff stopped his substance use he would continue to have severe impairments, but those impairments, alone or in combination, would not meet or medically equal any of the impairments in the Listings. (Tr. 30-33). Specifically, the ALJ found that if plaintiff stopped his substance use he would have moderate limitations in his ability to interact with others and to maintain concentration, persistence, or pace and would have mild limitations in his ability to understand, remember, or apply information and to adapt or manage himself. (*Id.*).

Next, the ALJ determined that if plaintiff stopped his substance use, he would retain the RFC to perform light work involving simple, repetitive, one to two-step tasks and only occasional interaction with coworkers and supervisors.[3] (Tr. 33-38). The ALJ concluded that plaintiff would be unable to perform tandem work or work involving contact with the public. (*Id.*). Additionally, plaintiff would be unable to engage in complex work involving multiple simultaneous goals or objectives or the need to independently set quantity, quality, or methods standards. (*Id.*).

The ALJ found that plaintiff would be unable to perform his past relevant work but that, if plaintiff stopped his substance use, other jobs existed in the national economy that plaintiff could perform, including the positions of laundry folder and plastic hospital product assembler. (Tr. 38-39). The ALJ concluded that plaintiff's substance use disorder was a contributing factor material to the determination of plaintiff's disability because plaintiff would

---

[3] Plaintiff's contentions relate only to the mental aspect of the ALJ's RFC determination. Therefore, I address only the mental portion of the RFC. *See*, *e.g.*, *Coleman v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 389, 394 n.3 (W.D.N.Y. 2018) ("[p]laintiff challenges only those portions of his RFC relating to his mental limitations[;] ... [a]ccordingly, this [d]ecision and [o]rder addresses the RFC only as it pertains to [p]laintiff's mental limitations").

not be disabled if he stopped the substance use. (Tr. 39-40). Accordingly, the ALJ found that plaintiff was not disabled. (*Id.*).

### III.     Plaintiff's Contentions

Plaintiff contends that the ALJ's determination that he was not disabled is not supported by substantial evidence and is the product of legal error. (Docket # 10). Plaintiff's sole challenge is that the ALJ's conclusion that his polysubstance use was material to the finding that he is disabled is not supported by substantial evidence. (Docket ## 10, 12).

### IV.     Analysis

Plaintiff's challenge is two-fold. First, he maintains that the ALJ's determination conflicts with Social Security Ruling ("SSR") 13-2p, which provides guidance in cases involving DAA, including those cases involving co-occurring mental impairments. (Docket # 10 at 5-6). *See* SSR 13-2p, 2013 WL 621536 (Feb. 20, 2013). Next, he maintains that the ALJ selectively chose only evidence favorable to a non-disability finding in evaluating whether plaintiff's mental impairments improved during his periods of abstinence. (Docket # 10 at 7-9).

Plaintiff interprets SSR 13-2p to mandate a finding of disability unless "the record *conclusively establish[es]* that, in the absence of DAA, plaintiff's condition would improve to the point of nondisability." (Docket # 10-1 at 6) (emphasis in original). In plaintiff's view, because the record contains some evidence that he continued to suffer from mental limitations even during periods of abstinence, the record does not conclusively establish that he would not be disabled absent his substance use. (*Id.* at 7). Plaintiff argues that because SSR 13-2p imposes a "more-demanding substantial evidence standard" in cases involving DAA (Docket # 12 at 1),

6

given the conflicting evidence in the record regarding his mental impairments during periods of sobriety, he should be awarded benefits (Docket ## 10-1 at 8-10; 12).

As an initial matter, I disagree with plaintiff's contention that SSR 13-2p imposes a heightened evidentiary standard in cases involving DAA and co-occurring mental disorders. In essence, plaintiff maintains that where the record contains conflicting evidence regarding mental impairments in the absence of DAA, a claimant is entitled to the benefit of the doubt and should be awarded benefits. I have already rejected such an interpretation of SSR 13-2p. *See Johnson v. Berryhill*, 2018 WL 4275985, *13 (W.D.N.Y. 2018) ("[n]or has [plaintiff] cited any authority for the contention that SSR 13-2p creates a 'benefit of the doubt' rule entitling a claimant to benefits if the evidence is not clear 'one way or the other' whether she would be disabled in the absence of drug or alcohol abuse").

Moreover, as I noted in *Johnson*, plaintiff's position is refuted by controlling Second Circuit authority holding that it is the claimant who bears the burden of proving whether drug and alcohol abuse is material to the disability determination. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012) ("we agree with the weight of the authority that claimants bear the burden of proving DAA immateriality") (collecting cases), *cert. denied*, 570 U.S. 919 (2013); *see also Davis v. Astrue*, 830 F. Supp. 2d 31, 48 (W.D. Pa. 2011) (finding that plaintiff's "benefit of the doubt" argument was a "slight misstatement of the law[;]" "the consensus among courts in [the Third] Circuit is that the burden is on the claimant, not the ALJ, to establish whether DAA is or is not material to the disability determination"). Although plaintiff maintains that *Cage* is no longer controlling authority because it predates SSR 13-2p (Docket # 12 at 2), I disagree.

7

First, social security rulings, which are binding on the Social Security Administration, "lack the force of law, and are not binding on courts." *See Golden v. Colvin*, 2013 WL 5278743, *6 (N.D.N.Y. 2013). Second, in *Cage*, the Second Circuit considered similar guidance to the language in SSR 13-2p upon which plaintiff relies to support his argument for a heightened evidentiary burden. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d at 125. Specifically, plaintiff relies upon the following language in SSR 13-2p:

> We will find that DAA is not material . . . to the determination of disability and allow the claim if the record is fully developed and the evidence does not establish that the claimant's co-occurring mental disorder(s) would improve to the point of nondisability in the absence of DAA.

(Docket # 10-1 at 5-6 (quoting SSR 13-2p, 2013 WL 621536 at *9)). In *Cage*, the Second Circuit considered similar language in an SSA document entitled Questions and Answers Concerning DAA from the 07/02/96 Teleconference-Medical Adjudicators, EM-96200 (Aug. 30, 1996 (the "Teletype"). *See Cage*, 692 F.3d at 125. The Teletype advised that "when it is not possible to separate the mental restrictions and limitations imposed by DAA and the various other mental disorders shown by the evidence, a finding of 'not material' would be appropriate." *Id.* (quoting the Teletype). Recognizing that the Teletype could be "read to endorse a presumption in favor of the applicant – i.e., that a tie goes to the claimant," the Second Circuit determined that the Teletype was "unpersuasive" and not entitled to deference. *Id.* at 125 (internal quotations omitted). In reaching this determination, the Second Circuit explained that altering the evidentiary burden of establishing DAA immateriality would undermine the purpose of the Contract with America Advancement Act, the statute which amended the Social Security Act to provide that an individual is not disabled where alcoholism or drug addiction is a material contributing factor to the disability determination. *Id.* at 123, 125 (citing 42 U.S.C. § 1382c

(a)(3)(J)).  Adhering to this precedent, I conclude that the burden of establishing DAA immateriality remains with the plaintiff and that the substantial evidence standard applies to the ALJ's determination of this issue.  *See Kass v. Kijakazi*, 2023 WL 5310445, *4 (E.D.N.Y. 2023) (rejecting argument that in cases involving DAA and co-occurring mental disorders "a presumption [exists] in favor of the applicant – i.e., that a tie goes to the claimant," reasoning that the Second Circuit rejected such interpretation in *Cage*); *Tara S. v. Berryhill*, 2019 WL 121243, *4 (N.D.N.Y. 2019) ("[t]he burden to demonstrate that DAA is not material rests with the claimant[;] [t]he [SSA] has published some guidance seeming to indicate that this is not the case, "i.e., that a 'tie goes to [the claimant]'[;] . . . [h]owever, the Second Circuit has made clear that in this Circuit the claimant bears the burden of proving DAA immateriality") (citing *Cage*, 692 F.3d at 123-24 and SSR 13-2p, 2013 WL 621536 at *9).

        I turn now to the question whether substantial evidence supports the ALJ's determination that plaintiff's substance use disorder was "a contributing factor material to the determination of disability."  (Tr. 39).  Under the Act, "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor *material* to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 1382c(a)(3)(J) (emphasis supplied).  Thus, in cases such as this, where alleged nonexertional limitations include substance abuse, the inquiry "does not end with the five-step analysis."  *Cage*, 692 F.3d at 123.  Rather, "if the ALJ determines that a claimant is disabled, and the record contains medical evidence of substance abuse, the ALJ must proceed to determine whether the substance abuse is a contributing factor material to the determination of disability – that is, whether the claimant would still be found disabled if he stopped using drugs or alcohol."  *Lynn v. Colvin*, 2017 WL 743731 *2 (W.D.N.Y. 2017) (quotations omitted); *see also Cage*, 692 F.3d at 123 ("[t]he critical

question is whether the SSA would still find the claimant disabled if [the claimant] stopped using drugs or alcohol") (citations and brackets omitted); 20 C.F.R. §§ 404.1535(a), 404.1535(b)(1), 416.935(a), 416.935(b)(1).

In making this determination, the Commissioner must evaluate which of the claimant's "current physical and mental limitations, upon which [the Commissioner] based [her] current disability determination, would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling." 20 C.F.R. § 404.1535(b)(2); *see also* 20 C.F.R. § 416.935(b)(2). If the Commissioner determines that the claimant's "remaining limitations would not be disabling, [the Commissioner] [must] find that [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(b)(2)(i); *see also* 20 C.F.R. § 416.935(b)(2)(i). As noted above, the claimant bears the burden of proving that drug addiction or alcoholism is not material to the disability determination. *Cage*, 692 F.3d at 123.

SSR 13-2p provides guidance "for how [the Commissioner] consider[s] whether 'drug addiction and alcoholism' (DAA) is a contributing factor material to [the Commissioner's] determination of disability in disability claims and continuing disability reviews." SSR 13-2p, 2013 WL 621536 at *1. Specifically, SSR 13-2p sets forth the following six questions to guide the "DAA Evaluation Process":

> (1) Does the claimant have DAA? (2) Is the claimant disabled considering all impairments, including DAA? (3) Is DAA the only impairment? (4) Is the other impairment(s) disabling by itself while the claimant is dependent upon or abusing drugs or alcohol? (5) Does the DAA cause or affect the claimant's medically determinable impairment(s)? (6) Would the other impairment(s) improve to the point of nondisability in the absence of DAA?

SSR 13-2p, 2013 WL 621536 at *5-6.  The ruling further provides that where a claimant also suffers from a mental disorder his or her DAA will be considered material where there is "evidence in the case record that establishes that [the] claimant . . . would not be disabled in the absence of DAA."  SSR 13-2p, 2013 WL 621536 at *9.

        The ALJ's decision demonstrates that he complied with applicable regulations and properly analyzed plaintiff's DAA and that his determination is supported by substantial evidence.  As noted above, at step two of the customary five-step process, the ALJ found that plaintiff had the severe impairments of polysubstance use disorder, depressive disorder, anxiety disorder, PTSD, and degenerative disc disease.  (Tr. 26).  At step three, the ALJ found that plaintiff was disabled because his mental impairments, including his substance use disorder, met Listings 12.04 and 12.06.  (Tr. 27).  Plaintiff does not contend that the ALJ erred to this point or that the ALJ erred in applying the so-called "special technique" in evaluating plaintiff's mental impairments.

        Pursuant to the regulations, the ALJ then reconsidered step two and concluded that plaintiff's remaining limitations, if he stopped his substance use, amounted to a severe impairment or combination of impairments.  (Tr. 30-31).  The ALJ found, however, that in the absence of substance use plaintiff would not have an impairment or combination of impairments that met or medically equaled a Listing.  (Tr. 31).  The ALJ then formulated an RFC to account for plaintiff's remaining limitations and determined that there were jobs existing in the economy that plaintiff could perform if he ceased his substance abuse.  (Tr. 33-39).  The ALJ therefore determined that plaintiff's substance use disorder was a contributing factor material to the determination of disability and that plaintiff was not disabled.  (Tr. 39-40).

Plaintiff maintains that the ALJ's determination that his substance abuse was a material contributing factor is not supported by substantial evidence because the record demonstrates that he continued to suffer from significant mental health symptoms even during periods of sobriety. (Docket # 10-1 at 7-10). According to plaintiff, the ALJ overlooked this evidence and instead cherry-picked information in the medical records favorable to his DAA materiality determination. I disagree.

Plaintiff identifies several instances in the record in which plaintiff reported or demonstrated symptoms despite allegedly being sober, maintaining that the ALJ's failure to specifically discuss those instances demonstrates his selective citation of the record evidence. (*Id.* at 7-10). Of course, "it is well-established that an ALJ need not discuss every piece of evidence in the record in order to show it was considered." *Candy A. O. v. Kijakazi*, 2022 WL 226804, *10 (N.D.N.Y. 2022). Moreover, the transcript in this matter spans approximately seven years of plaintiff's extensive medical treatment and exceeds 5,000 pages. Despite this voluminous record, the ALJ's decision reveals that he reviewed and summarized from treatment notes spanning the entire record.

Despite plaintiff's complaints that the ALJ "selective[ly] cit[ed]" the record, it is actually plaintiff who selectively culled the record for evidence that conflicts with the ALJ's determination. In doing so, the plaintiff mischaracterized the evidence and ignored the ALJ's general discussion of plaintiff's longitudinal treatment history. Indeed, the ALJ discussed in his decision at least one of the specific treatment notes identified by plaintiff. Specifically, plaintiff referenced an appointment in July 2017 during which he appeared with poor hygiene and admitted he had not showered in several days. (Docket # 10-1 at 8 (citing Tr. 1735)). The ALJ

discussed this treatment note in his decision, acknowledging that plaintiff presented as "malodorous" and reportedly had not showered in several days. (Tr. 32 (citing Tr. 1735)).

Moreover, several of the treatment notes identified by plaintiff document periods during which plaintiff was receiving inpatient detoxification and stabilization treatment, not periods of sobriety as plaintiff suggests. For instance, plaintiff highlighted treatment he had received in December 2014, during which he reported experiencing hallucinations and anxiety. (Docket # 10-1 at 7). The record demonstrates that on December 3, 2014, plaintiff presented to the emergency department with anxiety, depression, and suicidal ideation. (Tr. 650-51). Upon his admission to the hospital's psychiatric unit, plaintiff reported that he had recently left a substance abuse treatment program against medical advice and had since been consuming alcohol and approximately $4,000 worth of cocaine. (Tr. 613). Plaintiff remained in the psychiatric unit for approximately two weeks. (Tr. 511). During this inpatient admission, plaintiff reported experiencing anxiety, although the psychiatric provider's treatment notes documented that plaintiff engaged in sustained periods of positive peer interactions and that plaintiff's objective symptoms were not congruent with plaintiff's subjective reports of high anxiety. (Tr. 521, 531). Upon discharge, plaintiff was assessed to have "no acute mental health issues." (Tr. 511).

Plaintiff also discussed treatment notes from July 2018, which plaintiff characterized as reflecting an involuntary psychiatric admission during which plaintiff reported that he had not consumed any alcohol during the previous twelve months and had only consumed drugs on five occasions. (Docket # 10-1 at 9). To the contrary, the treatment notes reflect that plaintiff presented voluntarily to the hospital seeking admission. (Tr. 3353). Plaintiff reported that he had been "using suboxone off the street for the past 2 weeks . . . [and had] been using

13

cannabis daily." (*Id.*). In a treatment note a few days following admission, plaintiff acknowledged using "suboxone, cocaine, meth, cannabis and bath salts." (Tr. 3190).

Finally, plaintiff identified treatment notes from September 2018, which he characterized as reflecting that, despite having been sober for the prior few days, he was advised to go to the emergency department for suicidal ideation. (Docket # 10-1 at 9). Review of the relevant treatment notes demonstrate that on September 4, 2018, plaintiff called his mental health therapist requesting assistance in obtaining detoxification treatment. (Tr. 3185). Plaintiff reported that he was seeking immediate admission because he was concerned that he would consume street drugs and might overdose. (Tr. 3186). Plaintiff also reported that he had been using "meth, crack, heroin, and cannabis." (*Id.*). Plaintiff's mental health provider advised him to go to the emergency department to obtain detoxification and drug rehabilitation treatment. (*Id.*).

In contrast to plaintiff's selective and mischaracterized citations to the record, the ALJ properly focused his decision on the record evidence during plaintiff's periods of alleged abstinence from alcohol and drug use. The ALJ summarized the longitudinal evidence demonstrating that plaintiff's mental health symptoms improved during his periods of abstinence. Indeed, as recounted by the ALJ, the record shows repeated instances during which plaintiff was admitted on an inpatient basis. (Tr. 31-34). During those admissions, plaintiff's functioning improved and his mental status examinations were essentially normal by the time of discharge. (*See*, *e.g.*, Tr. 32 "[m]ental status examinations generally indicated no memory, attention, or concentration deficits when he was abstinent for even very short periods of time")). Moreover, the ALJ cited record evidence relating to plaintiff's daily functioning during his periods of sobriety, which included attending group meetings and therapy appointments,

cleaning his apartment, and exercising at the gym three days per week. (Tr. 32 ("[t]reatment records indicate that he reported he was working out at the gym three days per week")). The ALJ also discussed record evidence demonstrating that plaintiff's interpersonal relationships improved when he was sober and reflecting that his suicidal ideation reportedly subsided when he was sober and taking his psychotropic medication. (Tr. 32-33 ("[t]reat[ment] records indicate that the claimant admitted that he had an improved relationship and maintained good communication with both sons while abstinent")).

    Despite plaintiff's arguments to the contrary, the ALJ in his decision acknowledged that plaintiff continued to demonstrate some mental health symptoms during periods of sobriety. For instance, the ALJ noted that at times plaintiff exhibited irritable moods, intrusive thoughts, labile mood and affect, and poor hygiene, insight, and judgment. (Tr. 32 ("[a] few times when he alleged he was sober, treating sources observed that he exhibited intrusive thoughts and a labile mood and affect, which interfered with his ability to maintain attention and concentration"), ("[o]nce when the claimant alleged that he was sober, a treating source observed that he was malodorous and the claimant reported that he was that way because he had not showered in days"), 33 ("however, mental status examinations continued to reveal poor to fair insight and judgment")). In addition, the ALJ noted that plaintiff continued to complain of anxiety and depression during periods of abstinence. (Tr. 36 ("[d]espite being sober, the claimant would continue to complain of depression and anxiety, mostly surrounding his sons' refusal to communicate with him over his substance abuse issues")). The ALJ accounted for plaintiff's continued mental health symptoms by formulating an RFC limiting plaintiff to simple, repetitive work requiring limited interaction with others. (Tr. 33).

15

In his decision, the ALJ acknowledged plaintiff's continued mental health symptoms during his periods of sobriety but found that those symptoms were milder than they were during periods of drug and alcohol abuse, resulting in a finding that plaintiff's DAA was material.  I find the ALJ's determination regarding materiality is supported by substantial evidence in the record.  *See Smith v. Comm'r of Soc. Sec. Admin.*, 731 F. App'x 28, 30 (2d Cir. 2018) (summary order) ("[claimant] did not demonstrate that her substance abuse was not a material factor, and substantial evidence supported the ALJ's determination that it was[;] [plaintiff's] medical records showed that her . . . functioning improved when she underwent substance abuse treatment"); *Kass v. Kijakazi*, 2023 WL 5310445 at *5 ("although [p]laintiff's bipolar condition persisted while she was sober, the record reflects that her symptoms were milder than they were during periods of drug and alcohol abuse[;] [t]hus, the [c]ourt finds that there is relevant evidence that a reasonable mind might accept as adequate to support the conclusion") (internal quotations and brackets omitted); *Victoria K. v. Comm'r of Soc. Sec.*, 2020 WL 7258119, *7 (W.D.N.Y. 2020) ("[a]lthough plaintiff's periods of sobriety were brief, the record reflects general improvement of her symptoms with chemical dependency treatment and medication management[;] [a]dditionally, the balance of the record evidence strongly suggests that plaintiff's THC use was a primary impediment to her functioning[;] [t]his was sufficient for the ALJ to determine that plaintiff's substance abuse was material"); *Rowe v. Colvin*, 2016 WL 5477760, *8 (N.D.N.Y. 2016) ("[t]he medical evidence also supports a finding that [claimant's] functioning improved since [claimant] abstained from alcohol, including periods of 'brief sobriety'").

## CONCLUSION

After a careful review of the entire record, this Court finds that the Commissioner's denial of DIB was based upon substantial evidence and was not erroneous as a matter of law.  Accordingly, the ALJ's decision is affirmed.  For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 11)** is **GRANTED**.  Plaintiff's motion for judgment on the pleadings **(Docket # 10)** is **DENIED**, and plaintiff's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

                                                      *s/Marian W. Payson*
                                                      MARIAN W. PAYSON
                                              United States Magistrate Judge

Dated:  Rochester, New York
        September 21, 2023